**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Zachary T. Chrzan (SBN 329159)
*zchrzan@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SINATRO and SHANE WINKELBAUER, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>    vs.<br><br>WELCH FOODS INC., A COOPERATIVE and PROMOTION IN MOTION, INC.,<br><br>               Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)<br>2. Violation of False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)<br>3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)<br>4. Common Law Fraud<br>5. Intentional Misrepresentation<br>6. Breach of Warranty<br>7. Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**TABLE OF CONTENTS**

I.     COMPLAINT ..................................................................................................1

II.    INTRODUCTION ..........................................................................................1

III.   COURTS FIND "NO PRESERVATIVES" MISLABELING CLAIMS
       MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT ..........4

IV.   JURISDICTION .............................................................................................5

V.    VENUE ...........................................................................................................5

VI.   PARTIES ........................................................................................................6

       A.  Plaintiffs ..............................................................................................6

       B.  Defendants ...........................................................................................7

VII.  FACTUAL ALLEGATIONS .........................................................................8

       A.  Growing Demand for Preservative-Free and Other Healthy Food
           Products ...............................................................................................8

       B.  Citric Acid Is a Preservative .............................................................10

       C.  Lactic Acid Is a Preservative .............................................................13

       D.  The Deceptive Labeling and Advertising of the Products .................14

       E.  Defendants Knowingly Misled, and Continue to Mislead, Plaintiffs
           and Other Reasonable Consumers Who Relied, and Continue to Rely
           on, on the Material and False "No Preservatives" Representation to
           Their Detriment ..................................................................................26

       F.  Defendants' False Advertising Unfairly Harms Competition .................29

       G.  The Products are Substantially Similar ..............................................31

VIII. NO ADEQUATE REMEDY AT LAW .........................................................33

IX.   CLASS ACTION ALLEGATOINS .............................................................36

X.    COUNT ONE – Violation of California Unfair Competition Law ................39

       A.  "Unfair" Prong ....................................................................................41

       B.  "Fraudulent" Prong .............................................................................44

       C.  "Unlawful" Prong ...............................................................................45

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

XI.    COUNT TWO – Violation of California False Advertising Law...................46

XII.   COUNT THREE – Violation of California Consumers Legal
       Remedies Act ..........................................................................................47

XIII.  COUNT FOUR – Common Law Fraud........................................................50

XIV.   COUNT FIVE – Intentional Misrepresentation.............................................51

XV.    COUNT SIX – Breach of Warranty............................................................52

XVI.   COUNT SEVEN – Unjust Enrichment/Restitution.......................................52

XVII.  PRAYER FOR RELIEF ...........................................................................54

XVIII. DEMAND FOR JURY TRIAL ..................................................................55

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COMPLAINT

1. Plaintiffs Matthew Sinatro and Shane Winkelbauer ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" or "**Class Members**"), bring this class action complaint against Defendants Welch Foods Inc., A Cooperative ("**Welch's**") and Promotion In Motion, Inc. ("**PIM**") (collectively, "**Defendants**"), and allege the following based upon investigation, information, and belief, unless otherwise expressly stated as based upon personal knowledge.

## INTRODUCTION

2. **Synopsis.** Welch's is one of the most iconic and trusted brands in the consumer marketplace with a long history of touting the health benefits of its products to parents and families alike. As a result, generations of children have grown up enjoying the company's fruity drinks and snacks.

3. This class action lawsuit arises from a simple, yet egregious, abuse of that trust: Welch's falsely labels its popular fruit snacks ("**Products**"), which it deems 'America's favorite fruit snacks,' as containing "No Preservatives" (hereinafter, "**No Preservatives Representation**" or "**Challenged Representation**"), even though they contain two preservatives: citric and lactic acid.

4. Welch's knowingly makes this false label claim: it employs teams of food scientists, and the scientific community universally recognizes citric and lactic acid as preservatives. Further, food and beverage lawsuits around the nation have been upheld where products with additives such as citric acid have been falsely labeled as containing no preservatives.

5. Notably, Welch's competitors <u>also</u> use citric acid in their fruit snacks; but <u>only</u> Welch's persists in making the false No Preservative claim. Welch's conduct therefore not only interferes with the public's right to know what they are ingesting, but also with fair competition in the marketplace.

6. Welch's ignores the weight of authority, food science, and industry practice related to preservatives, because its false declaration of "No Preservatives" drives sales and profits: consumers wish to avoid preservatives and, therefore, they seek out and are willing to pay more

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

1    for products labeled as containing no preservatives.

2        7.      Even worse, Welch's targets health-conscious parents who are especially concerned

3    about feeding their children preservatives such as citric and lactic acid because the chemicals can

4    erode children's tooth enamel and aggravate their gastrointestinal tracts.

5        8.      Accordingly, absent judicial intervention, parents and the larger public will continue

6    to unknowingly ingest something they do not want, for themselves or their children, and pay a

7    higher price to do so.

8        9.      Below is a fair and accurate depiction of the Products' front labeling with the false

9    No Preservatives Representation circled in red. *See **Figure 1***.

10   ***Figure 1.***



28   *See also* Welch's® Fruit Snacks Front Labeling and Ingredient List, **Exhibits 1-1 to 1-12**.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

10. **The Deceptive "No Preservatives" Representation.** The "No Preservatives" Representation misleads reasonable consumers, including Plaintiffs, into believing that they are purchasing preservative-free Products. But contrary to Defendants' representations, the Products contain two preservatives: citric acid and lactic acid.

11. The false "No Preservatives" Representation is placed conspicuously, in bold typeface, in the center of the Products' front labels. It is positioned among other health-related claims and images typically associated with a healthy, natural diet. The cumulative effect of the Products' labeling is that the Products contain no preservatives whatsoever — and that they are healthier as a result.

12. Defendants' labeling of the Products with the false "No Preservatives" Representation violates California Civil Code Sections 1750, *et seq*. (the "**CLRA**"), particularly California Civil Code Sections 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendants have committed per se violations of Business & Professions Code Section 17200, *et seq.* (the "**UCL**") and Business & Professions Code Section 17500, *et seq*. (the "**FAL**"). Defendants also have been unjustly enriched and have breached their express and implied warranties about the Products.

13. Defendants' false and deceptive "No Preservatives" claim is uniformly advertised through their labeling, packaging, and online and print advertising. Through this false and deceptive advertising, Defendants have misled Plaintiffs and other reasonable consumers into buying the Products at stores across California and the United States based on Defendants' materially false claim that the Products contain "No Preservatives." Plaintiffs and the Class have suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief, as well as, inter alia, compensatory damages, statutory damages, restitution, and attorneys' fees.

14. **The Products.** The Products at issue are all flavors, varieties, and sizes of Welch's® brand fruit snacks sold in the United States that include the "No Preservatives" representation on their front labels and/or packaging. The Products include, but are not limited to, the following product lines and flavors.

   a.   Welch's® Fruit Snacks Mixed Fruit,

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

b.  Welch's® Fruit Snacks Summer Fruits,

c.  Welch's® Fruit Snacks Berries 'n Cherries,

d.  Welch's® Fruit Snacks Island Fruits,

e.  Welch's® Fruit Snacks Superfruit Mix,

f.  Welch's® Fruit Snacks Strawberry,

g.  Welch's® Fruit Snacks Apple Orchard Medley,

h.  Welch's® Fruit Snacks Citrus Medley,

i.  Welch's® Fruit Snacks Fruit Punch,

j.  Welch's® Fruit Snacks Concord Grape,

k.  Welch's® Fruit Snacks Reduced Sugar Mixed Fruit,

l.  Welch's® Fruit Snacks Reduced Sugar Berries 'n Cherries.

15.  **Primary Dual Objectives.** Plaintiffs bring this action individually and on behalf of those similarly situated to represent a National Class and a California Subclass of consumers who purchased the Products. Plaintiffs' primary objective is to secure injunctive relief requiring Defendants to change their unlawful advertising and labeling practices for the benefit of consumers, including Plaintiffs and the Class. Plaintiffs also seek monetary recovery of the price premium consumers overpaid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, and disgorgement).

## COURTS FIND "NO PRESERVATIVES" MISLABELING CLAIMS MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT

16.  State and federal courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See, e.g.*, *Prescod v. Celsius Holdings, Inc.*, Case No. 19STCV09321 (L.A.S.C. Aug. 8, 2021) (certifying as a class action a case involving beverages containing citric acid falsely labeled as having "No Preservatives"); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) (denying motion to dismiss as "no preservatives" mislabeling claim where the products contained citric acid); *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. II*, No. 14-md-02555-JSW, 2016 U.S. Dist. LEXIS 66266 (N.D. Cal. May 19, 2016) (denying defendant's motion for summary judgement as to "No

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Preservatives" mislabeling claims where the products contained the preservative phosphoric acid); *Cabrega v. Campbell Soup Co.*, No. 18-CV-3827(SJF)(ARL), 2019 U.S. Dist. LEXIS 245320 (E.D.N.Y. Nov. 18, 2019) (denying in part motion to dismiss "no preservatives" mislabeling claims where the product contained citric acid); *Ashour v. Ariz. Beverages United States LLC*, 2022 U.S. Dist. LEXIS 193603 (S.D.N.Y. Oct. 24, 2022) (denying motion to dismiss "No Preservatives" mislabeling claims where beverages contained citric acid).

## **JURISDICTION**

17.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) the Class consists of 100 or more members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.

18.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

19.     Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to do and are doing business in California.

## **VENUE**

20.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiffs' claims occurred in this District. Defendants made the challenged false representations in this District; and Plaintiff Sinatro purchased the Products in this District. Defendants also receive substantial revenue from sales in this District, and Defendants made numerous misrepresentations on its labeling that had a substantial effect in this District, including but not limited to, labeling and packaging advertisements.

///

///

///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**PARTIES**

**A.    Plaintiffs**

21.    **Plaintiff Matthew Sinatro.** Plaintiff Mathew Sinatro is, and at all times relevant hereto was, a citizen of California residing in the County of San Francisco. Plaintiff Sinatro purchased a 10-count box of the Product, specifically the Welch's® Fruit Snacks Berries 'n Cherries flavor, for approximately $4.00 at a Walgreens store in or around the City of San Francisco in 2022. In making his purchase, Plaintiff Sinatro relied upon Defendants' labeling of the Product as containing "No Preservatives" and was misled to believe that the Product was preservative-free. These labels were prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. At the time of purchase, Plaintiff Sinatro did not know that the "No Preservatives" representation was false. Had Plaintiff Sinatro known the Product contained preservatives such as citric and lactic acid, he would not have purchased the Product, or he would have paid less for it. Plaintiff spent money to purchase the Product, which was different than what he expected based on Defendants' false label, and Plaintiff did not receive the benefit of the bargain. Plaintiff enjoys fruit snacks as a common household staple and intends to purchase the Products again in the future if he could be sure that the Products were compliant with California and federal consumer protection and advertising laws.

22.    **Plaintiff Shane Winkelbauer.** Plaintiff Winkelbauer is, and at all times relevant hereto was, a citizen of California residing in Los Angeles County. Plaintiff Winkelbauer purchased a 10-count box of the Product, specifically the Welch's® Fruit Snacks Mixed Fruit flavor, for approximately $4.00 at a Target store in or around Los Angeles in 2021. In making his purchase decision, Plaintiff Winkelbauer relied upon Defendant's labeling of the Product as containing "No Preservatives" and was misled to believe that the Product was preservative-free. These labels were prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. At the time of purchase, Plaintiff Winkelbauer did not know that the "No Preservatives" representation was false. Had Plaintiff Winkelbauer known the Product contained preservatives

such as citric and lactic acid he would not have purchased the Product, or he would have paid

significantly less for it. Plaintiff spent money to purchase the Product, which was different than

what he expected based on Defendants' false label, and Plaintiff did not receive the benefit of his

bargain. Plaintiff enjoys fruit snacks as a common household staple and intends to purchase the

Products again in the future if he could be sure that the Products were compliant with California

and federal consumer protection and advertising laws.

**B.    Defendants**

23.    **Defendant Welch Foods Inc., A Cooperative**. Defendant Welch's is a Michigan

corporation headquartered in Concord, Massachusetts. Welch's maintains its principal place of

business at 300 Baker Avenue, Suite 101, Concord, MA 01742. Welch's was doing business in

the State of California at all relevant times, including the Class Period. Directly and through its

agents, Welch's has substantial contacts with and receives substantial benefits and income from

and through the State of California. Welch's licenses the Welch's® trademark to the manufacturer

and distributor of the Products, PIM, and Welch's approved the "No Preservatives"

Representation. Welch's brand recognition was a substantial factor in bringing the Products to the

consumer market, as the good will and familiarity associated with the Welch's® name makes the

Products more attractive to consumers. As a licensor, and because it exerts control or influence

over the manufacturing, labeling, advertising, distribution, and/or sale of the Products, Welch's is

responsible for the false and deceptive "No Preservatives" Representation that was disseminated

throughout California and the United States.

24.    **Defendant Promotion In Motion, Inc.** ("**PIM**"). Defendant PIM is a Delaware

corporation headquartered in New Jersey and maintains its principal place of business at 1 PIM

Plaza, Park Ridge, NJ 07656. Defendant PIM, directly and through its agents, has substantial

contacts with and receives substantial benefits and income from and through the State of

California. PIM and its agents manufactured, promoted, marketed, and sold the Products at stores

and retailers throughout California and the United States, as well as on the internet. The false and

deceptive "No Preservatives" Representation on the Products' packaging was prepared,

authorized, ratified, and/or approved by PIM and its agents, and was disseminated throughout

7

California and the United States.

25.     In committing the wrongful acts alleged herein, Defendants planned, participated in, and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendants participated in the making of such representations in that they did disseminate or cause to be disseminated the "No Preservatives" misrepresentations.

26.     Defendants, upon becoming involved with the licensing, manufacture, distribution, advertising, marketing, and sale of the Products, knew or should have known that the "No Preservatives" claim is fraudulent. Defendants affirmatively misrepresent the nature and a key characteristic of the Products to convince the public to purchase and consume the Products, resulting in significant profits to Defendants, all to the detriment of the consuming public and Defendants' lawfully acting competitors.

## FACTUAL ALLEGATIONS

**A.     Growing Demand for Preservative-Free and Other Healthy Food Products**

27.     **Healthy Food Products Are in High Demand.**  Global sales of 'healthy' food products reached a staggering $680 billion in 2020.[1] According to Nielsen's 2015 Global Health & Wellness Survey, which polled over 30,000 people, 80 percent of Americans are willing to pay more for healthier foods.[2] These figures underscore the following: consumers have a strong desire for 'healthy' food and beverage products and are willing to pay a premium for products advertised as such.

28.     **"No Preservatives" Label Claims Drive Consumer Purchasing.**  When shopping for and consuming 'healthy' foods, one of the main ingredients that consumers avoid is preservatives. For example, the FDA's 2019 Food Safety and Nutrition Survey found that **85 percent** of consumers are concerned about preservatives in food, and 17 percent are "[e]xtremely

---

[1] *The Global Wellness Economy: Looking Beyond COVID*, GLOBAL WELLNESS INST. (Dec. 2021), https://globalwellnessinstitute.org/press-room/statistics-and-facts/ (accessed August 3, 2022).
[2] *See We Are What We Eat: Healthy Eating Trends Around the World*, at 13, NIELSEN (Jan. 2015), https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/january-2015-global-health-and-wellness-report.pdf (accessed August 3, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

concerned."[3]

29.     Consumers are increasingly interested in "clean eating," and Innova Market Insights' 2020 Health & Nutrition Survey found that 51 percent of consumers believe that clean eating means consuming products "free of additives and preservatives."[4]

30.     Another 2018 survey of nearly 1,600 consumers found that 93 percent want to eat healthy at least some of the time, and 63 percent prefer to eat healthy foods "most or all of the time."[5]

31.     The 2018 study also found that preservative-free foods are highly sought after, and that "No Preservatives" representations are among the top two label claims driving consumer health food purchasing decisions.[6]

32.     Companies leverage these known consumer preferences, using "No Preservatives" label claims to drive sales by (1) distinguishing their products from competitors in the market, and (2) capitalizing on consumers' preference for "healthier" preservative-free products.

33.     **Parents Prefer Preservative-Free Foods.** Parents, to whom Defendants extensively market the Product, are especially concerned with avoiding preservatives in food they purchase for their children, as preservatives can erode children's tooth enamel and aggravate gastrointestinal tracts, among other possible negative consequences.

34.     In fact, a recent comprehensive meta-analysis examining what drives parental food-purchasing decisions found that parents prioritize representations about preservative content over nearly every other nutritional statement.[7]

---

[3] A. Lando, L. Verrill & F. Wu, *FDA's Food Safety and Nutrition Survey, 2019 Survey*, at 17, U.S. FOOD & DRUG ADMIN. (Mar. 2021), https://www.fda.gov/media/146532/download (accessed August 3, 2022).
[4] *The Changing Face of Clean Label*. IFT.org. (Sept. 1, 2021), https://www.ift.org/news-and-publications/food-technology-magazine/issues/2021/september/columns/ingredients-clean-label.
[5] *Consumers Say They Want to Eat Healthy*, FOOD INDUSTRY EXECUTIVE. (Sept. 2019), https://foodindustryexecutive.com/2019/03/consumers-say-they-want-to-eat-healthy/ (accessed October 1, 2022).
[6] Steingoltz, M., Picciola, M., & Wilson, R. *Consumer Health Claims 3.0: The Next Generation of Mindful Food Consumption*, Executive Insights, *XX*(51). L.E.K. (2018). https://www.lek.com/sites/default/files/insights/pdf-attachments/2051-Healthy-Food-Claims.pdf
[7] Divya Ravikumar et al., *Parental perceptions of the food environment and their influence on food decisions among low-income families: A rapid review of qualitative evidence*, 22 BMC PUBLIC HEALTH (2022).

9

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

35. Study after study shows that parents prioritize nutritional value and health, and therefore avoid preservatives, when purchasing food products for their children. For example, a 2017 survey conducted by BabyCenter Brand Labs found that 32% of parents actively avoid products containing preservatives when purchasing food to feed their children.[8]

36. According to parents, nutrition claims like "No Preservatives" increase the perceived healthiness of food products.[9]

37. While parents prefer healthy products, they "often do not engage in an in-depth cognitive processing to make their healthiness judgement."[10] Instead, parents rely on the nutritional advertising claims made on food labels and packages.[11] In other words, parents rely on the accuracy of "No Preservative" label claims in making their purchase decisions.

38. Companies know that health and safety are paramount when consumers purchase food for their children, so they include label statements conveying health benefits in an effort to drive parents to purchase their product over a competitor's.[12] And that is exactly what Welch's does here: it makes a claim that no other competitor with citric acid in their fruit snacks claim (because it is not true) — that the snacks are preservative-free.

39. **Marketing Experts.** Experts in marketing and consumer behavior confirm what individual survey data indicates: consumers seek out and are willing to pay more for products without preservatives because of the perceived higher quality, as well as for the health and safety benefits associated with preservative-free food and beverages.

**B. Citric Acid Is a Preservative**

40. **Chemical Properties of Citric Acid.** The Products contain citric acid. According to the chemical properties of citric acid and food scientists, citric acid is a preservative. Food preservatives are classified into two main groups: antioxidants and antimicrobials. Citric acid is an antioxidant, meaning it delays or prevents the deterioration of foods by so-called oxidative

---

[8] *2017 Food & Nutrition Report*, BabyCenter Brand Labs Insights (July 2017).
[9] Gastón Ares et al., *The role of food packaging on children's diet: Insights for the design of comprehensive regulations to encourage healthier eating habits in childhood and beyond*, 95 Food Quality and Preference, 104366, at 4 (2022).
[10] *Id.*
[11] *Id.*
[12] *Id.*

mechanisms.

41.    In particular, citric acid acts as an antioxidant agent via two processes—inhibiting enzymes and chelating metals. Certain enzymes oxidize food molecules, which contributes to food deterioration. Citric acid deactivates these enzymes, thereby functioning as a preservative.[13]

42.    Citric acid's ability to chelate, which means to form compounds containing a ligand bonded to a central metal atom at two or more points, with other chemical compounds, also allows citric acid to stabilize active ingredients in food products.[14]

43.    Citric acid also has antimicrobial properties and inhibits the growth of some bacteria and mold.[15] This is yet another reason why food scientists classify citric acid as a preservative.[16]

44.    **Preservative Function of Citric Acid.**  Citric acid functions as a preservative in the Products, and this is true regardless of Defendants' subjective purpose or intent for adding it to the Products, such as to impart flavor.[17]

45.    **The Citric Acid in the Products Is Chemically Processed.** Citric acid can be the naturally-occurring kind, which is derived from certain citrus fruits. But the citric acid in the Products is the commercially produced kind, which is manufactured and undergoes extensive chemical processing.[18] In fact, more than 90 percent of commercially produced citric acid, including the citric acid used in the Products, is produced through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[19] Negative

---

[13] *Preservatives*, BRITANNICA, https://www.britannica.com/topic/food-additive/Preservatives#ref502211 (accessed September 8, 2022).

[14] P. Davidson et al., *Chapter 9: Antimicrobial Agents*, in FOOD ADDITIVES, at 591 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).

[15] *Supra* note 13.

[16] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (accessed August 3, 2022).

[17] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry*, 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives")

[18] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

[19] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[20]

46.     **FDA Definition of "Preservative."** The U.S. Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof." 21 C.F.R. § 101.22(a)(5). The citric acid in the Products has this effect.

47.     **The FDA Classifies Citric Acid as a Preservative.** In its "Overview of Food Ingredients, Additives & Colors," the FDA lists "citric acid" as a preservative.[21] The FDA also recognizes that preservatives, like citric acid, are commonly used in snack foods like the Products.

48.     Under the "What They Do" table heading, the FDA elaborates that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[22] As discussed *supra* (¶¶ 40-43), these are the processes by which citric acid preserves food.

49.     **FDA Warning Letter.** The FDA's classification of citric acid as a preservative is reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc. In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added).[23]

---

four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (accessed August 3, 2022); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (accessed August 3, 2022).
[20] *See Sweis & Cressey*, note 19 *supra*.
[21] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors#types (accessed August 3, 2022).
[22] *Id.*
[23] *See Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.*, ARCHIVED FDA WARNING LETTERS (2005-2012), https://www.fdalabelcompliance.com/letters/ucm228663 (accessed August 3, 2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

50.    **Food Science Experts.**  Food science experts recognize that citric acid is a preservative commonly used to extend a product's shelf-life, because many microorganisms are unable to grow in an acidic environment. Leading food science experts also agree that, notwithstanding the specific purpose for which it is added to a food, citric acid is a preservative and its presence in any food product renders a "No Preservatives" claim invariably deceptive.

C.    **Lactic Acid Is a Preservative**

51.    **Chemical Properties of Lactic Acid.** Despite Defendants' declaration that the Products have "No Preservatives," they also contain a second preservative: lactic acid, which belongs to the category of preservatives known as antimicrobials.[24] This means it preserves by inhibiting the growth of spoilage and pathogenic microorganisms in food.[25] Lactic acid also is a pH control agent, which means it preserves foods by preventing rancidity or complex formation with heavy metals that lead to oxidation and/or browning reactions.[26] Thus, both the antimicrobial and the pH control properties of lactic acid function to extend the shelf life of food.

52.    Like citric acid, lactic acid also functions as a chelating agent. By binding metal ions that catalyze fat or oil oxidation, lactic acid stabilizes food color, aroma, and texture.[27]

53.    While lactic acid can be found naturally in various plants, microorganisms, and animals, the lactic acid in the Products is commercially produced and artificially manufactured by processes of chemical synthesis or microbial fermentation. Since 1995, nearly all lactic acid is produced via this fermentation method.[28] By 2013, approximately 90% of lactic acid worldwide was produced via fermentation.[29]

54.    **Preservative Function of Lactic Acid.** The primary use of lactic acid in the food

---

[24] *See supra*, note 13.
[25] *See supra*, note 14.
[26] *pH Control Agents and Acidulants Market*, PERSISTENCE MARKET RESEARCH, https://www.persistencemarketresearch.com/market-research/ph-control-agents-and-acidulants-market.asp (accessed September 8, 2022).
[27] D. Belitz, W. Grosch & P. Schieberle, *Chapter 8: Food Additives* in FOOD CHEMISTRY, at 455 (Springer, Berlin, Heidelberg, 2009).
[28] John N. Starr & Gerrit Westhoff, *Lactic acid* in ULLMANN'S ENCYCLOPEDIA OF INDUSTRIAL CHEMISTRY, at 1–8 (2014).
[29] Hendrich Quitmann et al., *Acidic organic compounds in beverage, food, and feed production*, ADVANCES IN BIOCHEMICAL ENGINEERING/BIOTECHNOLOGY, at 115 (2013).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

industry is as a preservative.[30] Lactic acid functions as a preservative in the Products by suppressing bacteria growth and by preventing oxidation.[31] Like citric acid, lactic acid functions as a pH control agent and acidulent and is used to control acidity and prevent spoilage.[32]

55.   **Lactic Acid Functions as a Preservative in the Products.** Lactic acid functions as a preservative in the Products, and this is true regardless of Defendants' subjective purpose or intent for adding it to the Products, such as a gelatin agent.

56.   **Industry Custom for Gelatin-Based Products.** Lactic acid increases the shelf life of many gelatin-based food products, including fruit-flavored gummy snacks like the Products, which are water-soluble and therefore susceptible to degradation when exposed to oxygen, moisture, light, heat, and change in pH.[33] Water-soluble gelatin solutions are good media for microorganisms like bacteria and molds to grow, so it is common in the industry to lower the pH of (or acidify) the food product using lactic acid to maintain and prevent growth of microorganisms, despite new trends to use natural, more expensive preservatives such as spices or fruit peels.[34] Thus, removing citric acid and lactic acid from the Products would have effects on their pH, moisture, color, texture, and shelf life.[35] The Products would need to use a different, likely more expensive, method to sufficiently preserve their contents.

57.   **The FDA Defines Lactic Acid as an Antimicrobial Agent.** In 21 C.F.R. § 184.1061, the FDA recognizes lactic acid's use as an antimicrobial agent, which is defined as "Substances *used to preserve food* by preventing growth of microorganisms and subsequent spoilage, including fungistats, mold and rope inhibitors, and the effects listed by the National Academy of Sciences/National Research Council under 'preservatives.'" (emphasis added) 21

---

[30] *Id.* at 116.
[31] *What to Know About Lactic Acid in Food*, WEBMD. (2021), https://www.webmd.com/diet/what-to-know-about-lactic-acid-food#:~:text=Lactic%20acid%20is%20a%20good,agent%20and%20a%20curing%20agent (accessed September 8, 2022).
[32] *See supra*, note 13.
[33] B. Yan et al., *Improvement of vitamin C stability in vitamin gummies by encapsulation in casein gel*, FOOD HYDROCOLLOIDS 113 (Jan. 17, 2021), https://doi.org/10.1016/j.foodhyd.2020.106414 (accessed August 3, 2022).
[34] I. Matulyte et al., *The Effect of Myristica fragrans on Texture Properties and Shelf-Life of Innovative Chewable Gel Tablets,* 13 PHARMACEUTICS 2 (Feb. 9, 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7915811/ (accessed August 3, 2022).
[35] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

14

1    C.F.R. § 170.3(o)(2).

2    **D.       The Deceptive Labeling and Advertising of the Products**

3         58.    **Products' Labeling.** Defendants falsely and deceptively label all sizes, flavors, and

4    variations of the Products with the Challenged Representation — "No Preservatives" — as

5    depicted below and circled in red. *See **Figures 2-3***.

6    ***Figure 2.***



18    ***Figure 3.***



CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

59.     Because consumers place importance on the preservative content of foods, Defendants place the false "No Preservatives" representation in a conspicuous location: on each Product's front label or packaging and underneath the flavor and iconic Welch's brand name. To draw consumers' attention, the Challenged "No Preservatives" Representation is displayed in the center of the label, next to other material dietary information, including, for example, "Excellent Source of Vitamins A, C & E," "Gluten Free," and "Made with Real Fruit!" The net effect or impression on reasonable consumers is that the Products do not contain preservatives — because that is what the Products say, prominently.

60.     **Products' Website.**  In furtherance of this fraudulent labeling scheme, the false "No Preservatives" representation permeates Defendants' marketing strategy across all forms of media. For example, Defendants emphasize the "No Preservatives" representation on the Welch's ® Fruit Snacks website:

a.   **Welch's® Fruit Snacks: Our Story.** On the "Our Story" page of the Products' official brand website, Defendants state: "It's no wonder Welch's® are America's Favorite Fruit Snacks®. Available in over 10 varieties, in which Fruit is our 1st Ingredient!™ Featuring an excellent source of Vitamins A, C & E, ***No Preservatives***, Fat Free, Gluten Free and more! Available in a range of packaging options to fit your needs, whether at home, work or on the go."[36] By positioning the false "No Preservatives" representation among other statements implicating the health benefits of the Products, Defendants specifically target health-conscious consumers who make purchasing decisions based on these types of representations. A similar statement appears on the website's homepage, and additional images of the Products bearing the "No Preservatives" representation appear throughout the Products' official brand website. *See* Welch's® Fruit Snacks Website: Our Story Screenshots, ***Figure 4***.

///

///

---

[36] *Welch's® Fruit Snacks: Our Story*, WELCH'S FRUIT SNACKS, https://welchsfruitsnacks.com/our-story/ (accessed August 3, 2022) (emphasis added).

*Figure 4.*



b. **Welch's® Fruit Snacks FAQ.** On the Frequently Asked Questions page on the Products' official brand website, Defendants falsely and repeatedly claim that the Products contain no preservatives. For example:

  i. *Q: Do Welch's® Fruit Snacks . . . contain preservatives?* A: No, they are **preservative free.**

  ii. *Q: Are Welch's® Fruit Snacks healthy?* A: Real fruit is the first ingredient in Welch's® Fruit Snacks. Healthy living involves getting the recommended daily allowance of vitamins and minerals. Welch's® Fruit Snacks are an excellent source of Vitamins C, A, and E. They are fat-free, gluten-free, and **have no preservatives**.[37] *See also* Welch's® Fruit Snacks Website FAQ Screenshots, *Figure 5.*

///

///

///

///

---

[37] *Welch's® Fruit Snacks: FAQ*, WELCH'S FRUIT SNACKS, https://welchsfruitsnacks.com/faq/ (accessed August 3, 2022) (emphasis added).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

**Figure 5.**

2





61.    **Welch's Twitter.** The Products also have a dedicated Twitter account, where Defendants similarly double-down on the fraud alleged herein, specifically isolating and touting the false "No Preservatives" claim.

62.    For example, the account tweets: "Did you know Welch's Fruit Snacks have **zero preservatives**?" Notably, in response to this, and similar tweets, the consuming public expresses how important this claim is to them, in one case tweeting simply: "yes it's why I choose to eat them." *See* Welch's® Fruit Snacks Twitter: Screenshot, **_Figure 6._**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    _**Figure 6.**_



21       63.    Further demonstrating the materiality of the false "No Preservatives" claim, parents

22   have tagged the Product (and other Welch's products), exclaiming they have "no preservatives!"

23   together with comments like: "My kids and I all approve!" *See* Welch's® Fruit Snacks Twitter:

24   Screenshot, _**Figure 7.**_

25   ///

26   ///

27   ///

28   ///

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1

***Figure 7.***



64.     Defendants otherwise extensively and falsely tout the Products as preservative-free

via the Products' Twitter account. *See, e.g.*, Welch's® Fruit Snacks Twitter: Screenshots, ***Figures***

***8-9.***

///

///

///

///

///

20

CLASS ACTION COMPLAINT

1

*<u>Figure 8.</u>*

2

3

4

5

6

7

8

9

10

11

12

13



14

*<u>Figure 9.</u>*

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

65.     **The Products Contain Preservatives.** Contrary to Defendants' false "No Preservatives" labeling and advertising, and excitement in the market based on it, the Products in fact contain preservatives. According to the Products' ingredient list on the back label, they contain two preservatives: citric acid and lactic acid. (**Exhibits 2-1 to 2-12**).

66.     In the consumer marketplace, Defendants therefore get the benefit of selling Products that purportedly contain "No Preservatives"—more demand for the Products and sales at a higher price per unit—without any of the added cost and complexity it otherwise would incur if the products were, in fact, preserved without citric and lactic acid.

67.     Given the importance consumers place on preservative-free foods, Defendants retain an unfair economic advantage over all other major fruit snacks on the market, which contain citric acid, but do not claim to have "No Preservatives" — because it is not true.

68.     **Reasonable Alternatives.** There are and were, at all relevant times, reasonable alternatives available to Defendants to comply with consumer protection laws. Like Defendants' competitors, Defendants could elect not to advertise the Products as having "No Preservatives" and thus lawfully continue using citric and lactic acid to preserve the Products.

69.     Alternatively, if Defendants wish to continue claiming "No Preservatives," there are alternative ways to enhance the shelf life of products without using the preservatives citric and lactic acid, such as vacuum packaging, although those methods are more difficult and more expensive. Defendants decided to take the easy route when it came to preserving the Products, yet they continue to make the false "No Preservatives" Representation.

70.     **Materiality.** The false "No Preservatives" Representation was and is material to reasonable consumers, including Plaintiffs, as research on consumer preferences demonstrates (*See* ¶¶ 28-39). That is why Defendants chose to feature it front and center on the Products' front labels, together with only two other health claims. Consumers perceive the Products as healthier due to the "No Preservatives" Representation and are more likely to purchase the Products as a result.

71.     **Defendants' Advertising Targets Children and Parents.** Defendants' knowing disregard of consumer protection law is unacceptable from the vantage point of all consumers, but

it is especially concerning in light of the special care advertisers are expected to take with regard to nutritional claims for foods that are likely to be appealing to children, as the Products are.

72.     Defendants' marketing efforts directly target parents and children to capitalize on parents' desires to provide healthy, well-balanced diets for their children. As explained *supra*, "No Preservatives" advertising claims make food products more attractive to consumers and increase the likelihood that consumers will purchase and consume the Products. Parents prioritize nutritional value and healthiness when selecting food products to purchase for their children and seek out products without preservatives. Thus, while the "No Preservatives" Representation is material to all consumers, it is especially so to parents.

73.     Defendants know that parents want preservative-free products. That is why Defendants intentionally aim their "No Preservatives" marketing and advertising efforts towards parents, children, and families.

74.     For example, the landing page for the Products' website prominently features Defendants' "Snack Fruitfully®" advertising campaign. Embedded in the landing page is a commercial showcasing the Products' front label, including the "No Preservatives" representation. *See **Figure 10***. The remainder of the promotional video features young children consuming and enjoying the Products. *See **Figures 11-12.***

**Figure 10.**



CLASS ACTION COMPLAINT

1

*__Figure 11.__*



*__Figure 12.__*



75.    Moreover, on the "Our Story" page of the Products' official website, Defendants describe the Products as "Made for Families," and state: "Getting out the door with kids is never predictable. Some days are good, and others are bad. For you, on-the-go snacks are a must!"

Similar appeals to families and parents are a recurring theme in Defendants' advertising materials.

76.     Defendants also target school districts with this false and deceptive labeling scheme. The Products' official brand website includes an external link for "School Foodservice." The link takes the user to a page titled "School Foodservice" on Defendant PIM's company website, where Defendants display several variations of the Products' front labels, including the "No Preservatives" representation, and state: "Welch's® Fruit Snacks are America's Favorite. With fruit as the first ingredient, 1.55 oz Welch's® pouches meet the USDA Smart Snack guidelines so **kids can enjoy them at school, at home or on the go.**" *See* **Figure 13**.

**Figure 13.**



77.     Defendants' sustained efforts to market and advertise the products directly to children, parents, and schools underscores the need for judicial intervention: parents are unknowingly feeding to their children chemical preservatives they wish to avoid, which can have harmful health impacts. In all cases, Defendants are misleading consumers as to the ingredients they are ingesting.

///

**E.  Defendants Knowingly Misled, and Continue to Mislead, Plaintiffs and Other Reasonable Consumers Who Relied, and Continue to Rely on, on the Material and False "No Preservatives" Representation to Their Detriment**

78.  **Reputability.** Defendant Welch's is an iconic and trusted brand that has been in business since 1869.[38] With such an established history, consumers reasonably expect all representations on the Products' labels to be truthful and reliable. Defendants use the good will associated with the Welch's® brand name to mislead consumers and gain a competitive advantage in the marketplace. In fact, Welch's is the only fruit snack in the market with citric acid that persists in making the "No Preservatives" claim, thereby increasing sales and profiting substantially from their fraudulent labeling.

79.  The Products are sold nationwide at major retailers such as Kroger, Target, Walmart, and Walgreens. Consumers expect to receive truthfully labeled goods when shopping at such reputable stores. Defendants take advantage of this goodwill by intentionally leading consumers in California, and across the nation, to believe the Products are preservative-free even though they contain two preservatives: citric acid and lactic acid.

80.  **Reasonable Consumer's Perception.**  Defendants' pervasive "No Preservatives" advertising campaign and brand strategy misleads reasonable consumers, including Plaintiffs and the Class, into believing that the Products do not contain preservatives, and that this false feature is a significant value-add over competitor fruit snacks.

81.  Reasonable consumers do not, and are not required to, view the back label and ingredient list of a product when purchasing everyday food and beverage items. The Products' advertising and front labeling indicate to consumers that the Products are preservative-free, because that is what they declare front-and-center: "No Preservatives." So reasonable consumers, including Plaintiffs and the Class, believing that Welch's is a reputable and trustworthy brand, relied on the "No Preservatives" representation on the front label and did not and do not view the Products' back label prior to purchasing the Product.

82.  The average consumer lacks the specialized knowledge necessary to identify

---

[38] *Our Story*, WELCH'S, https://www.welchs.com/our-story/ (accessed October 11, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

ingredients listed in the Products' ingredient lists as inconsistent with the "No Preservatives" representation on the front label. Thus, even if a consumer conducted a detailed review of the Products' back label and ingredient lists, which they are not required to do under the law, nothing would overcome the reasonable impression given by the "No Preservatives" representation on the front label — that the products do not contain any preservatives.

83.     By falsely and deceptively labeling the Products, Defendants capitalize on consumers' preference for foods that are preservative-free, and reasonable consumers, including Plaintiffs, perceived the Products as healthier than the available alternative fruit snacks, which do not claim to be preservative-free. This deceptive labeling scheme gives Defendants an unfair competitive advantage in the market and causes consumers to pay an unwarranted premium for the Products.

84.     **Falsity.** The "No Preservatives" representation is false and deceptive because the Products contain citric acid and lactic acid—two preservatives according to well-established food science and classified as such by the FDA. Citric acid and lactic acid are preservatives, and operate as such in the Products, regardless of Defendants' subjective purpose or intent for adding them to the Products.

85.     **Materiality and Reliance.** The "No Preservatives" misrepresentation is material to consumers because consumers prefer preservative-free foods, in part because of the health implications of preservatives, and otherwise because of the negative connotations associated with the consumption of preservatives generally. In all cases, consumer and marketing research is clear: consumers wish to avoid preservatives and thus they seek out, and are willing to pay more for, foods advertised as containing "No Preservatives," like the Products. Consequently, Defendants have sold millions of the Products based on the false "No Preservatives" representation. Plaintiffs and the Class reasonably relied on Defendants' misrepresentations as to the preservative-content of the Products in deciding to purchase the Products and, as a result, have lost money and suffered injury in fact.

86.     **Defendants' Knowledge.** Welch's employs teams of food scientists, so Defendants knew, or should have known, that the "No Preservatives" representation was false, misleading,

deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products to Plaintiffs and the Class. Defendants' knowledge can also be inferred by the industry practice for fruit snacks, which is to <u>not</u> market them as containing "No Preservative," due to ingredients like citric acid and lactic acid. Instead, Defendants intentionally and deliberately used the "No Preservatives" representation to induce Plaintiffs and the Class to buy the Products believing that the Products contain no preservatives.

a.   **Knowledge of Reasonable Consumers' Perception.** Defendants knew or should have known that the Challenged Representation would lead reasonable consumers to believe that the Products are preservative-free — because that is how they labeled the Products, consistently and conspicuously: "No Preservatives."

b.   **Knowledge of Materiality.** Defendants knew or should have known of the Challenged Representation's materiality to consumers. First, manufacturers and marketers, like Defendants, generally reserve the front display panel of labels or packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Defendants declare "No Preservatives" on the front of the Product label, and its conspicuousness alone demonstrates Defendants' awareness of its importance to consumers and Defendants' understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation. Second, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping consumers' expectations, because they believe those repeated messages will drive consumers to buy the product. Here, the constant, unwavering use of "No Preservatives" on countless Products, advertisements, and throughout Defendants' marketing campaign, evinces Defendants' awareness that the "No Preservatives" attribute is important to consumers.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

c.   **Defendants' Continued Deception, Despite Their Knowledge.** Defendants had exclusive control over the Challenged Representation's inclusion on the Products' labels, packaging, and advertisements—i.e., Defendants could have stopped using the Challenged Representation to sell the Products. However, despite Defendants' knowledge of the Challenged Representation's falsity, and Defendants' knowledge that consumers reasonably rely on the representation in deciding to buy the Products, Defendants deliberately chose to market the Products with the Challenged Representation thereby misleading consumers into buying or overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Challenged Representation misleads reasonable consumers, such as Plaintiffs, into buying the Products to attain the Products' attributes that Defendants falsely advertised and warranted.

87.   **Injury in Fact.** Plaintiffs and reasonable consumers would not have purchased the Products at all or would have paid less if they had known the truth — that the Products contain preservatives. Defendants' misleading and deceptive practices therefore proximately caused harm to Plaintiffs and the Class. Consumers, including Plaintiffs, purchased the Products to their detriment and did not receive the product they reasonably expected.

88.   **No Legitimate Business Reason.** There is no legitimate reason for the false and misleading labeling and advertising of the Products, other than to mislead consumers with regard to preservatives, which consumers wish to avoid ingesting. Through such false and misleading advertising, consumers purchase the Products incorrectly believing they are preservative-free, and the only such one in the fruit-snack market, thus providing Defendants with an unfair competitive advantage and financial windfall.

F.   **Defendants' False Advertising Unfairly Harms Competition**

89.   The demand for healthy, preservative-free food products is only increasing. As healthy snack-food options continue to increase in popularity, other companies will want to enter the market to meet growing consumer demand. Ultimately, this is good for consumers: it provides

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

them with greater choice.

90.     As a result of Defendants' false label, they reap the benefits of marketing and selling a preservative-free snack, i.e., Defendants' Products are more attractive to consumers who will pay more for them, without any of the burden Defendants otherwise would incur if the Products were, in fact, produced without the use of preservatives. Defendants therefore have a built-in, unfair competitive advantage in the market over competitors seeking to bring a truly preservative free gelatin-based fruit snack product to market. It might even dissuade others from entering the market at all, given the overwhelming market share Defendants already hold as a result of their fraud.

91.     Further, existing competitors who produce gelatin-based fruit snacks are competing honestly in the marketplace and do not falsely claim that their products are preservative-free. For example, Mott's offers a fruit snack product, and its label complies with consumer protection laws: the product contains citric acid, and thus, the label does not falsely represent that the product contains "No Preservatives." *See* Mott's Fruit Snacks, ***Figure 14***.

***Figure 14.***



**INGREDIENTS**
CORN SYRUP, SUGAR, MODIFIED CORN STARCH, PEAR JUICE CONCENTRATE, APPLE JUICE CONCENTRATE, STRAWBERRY PUREE, CARROT JUICE CONCENTRATE. CONTAINS 2% OR LESS OF: FRUIT PECTIN, CITRIC ACID, VITAMIN C (ASCORBIC ACID), DEXTROSE, SODIUM CITRATE, MALIC ACID, POTASSIUM CITRATE, SUNFLOWER OIL*, VEGETABLE AND FRUIT JUICE ADDED FOR COLOR, NATURAL FLAVOR, CARNAUBA WAX. *ADDS A TRIVIAL AMOUNT OF FAT
MOTT'S is a registered trademark of Mott's LLP, used by General Mills under license. ©2017 Mott's LLP.

CLASS ACTION COMPLAINT

92.    Annie's is yet another lawfully acting competitor disadvantaged by Welch's fraud. Annie's organic fruit snack product contains citric acid, and therefore Annie's does not label it as containing "No Preservatives." *See* Annie's Organic Bunny Fruit Snacks, **_Figure 15_**.

**_Figure 15._**



93.    Because Defendants already hold a massive share of the fruit snack market in the United States as a result of their fraud, the continued false and deceptive advertising of the Products serves as a major barrier to entry for other lawfully acting competitors attempting to break into the market with a truly preservative free fruit snack or otherwise.

94.    This stifling impact on competition harms consumers and law-abiding companies and threatens market growth. Ultimately it reduces consumer choice, making it more likely that consumers will be deceived into buying Defendants' Products, reasonably, but incorrectly, thinking that the Products contain "No Preservatives" as Defendants falsely represent. Less choice also means consumers pay higher prices at the cash register.

**G.    The Products are Substantially Similar**

95.    As described herein, Plaintiffs purchased the Welch's® Fruit Snacks Berries 'n Cherries Product and the Welch's® Fruit Snacks Mixed Fruit Product (the "**Purchased**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**Products**"). The additional Products (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Products.

    a.    **Defendants.** All Products are owned, manufactured, sold, marketed, advertised, labeled, and packaged by Defendants.

    b.    **Brand.** All Products are sold under the same brand name: Welch's® Fruit Snacks.

    c.    **Purpose.** All Products are fruit snacks intended for human consumption.

    d.    **Ingredients.** All Products are made from largely the same ingredients or types of ingredients: various fruit purees (depending on the Product flavor), corn syrup, sugar, modified corn starch, citric acid, lactic acid, and gelatin, all of which are manufactured into the finished Products in the same or similar manner. Critically, all Products contain the preservatives citric and lactic acid rendering Defendants' "No Preservatives" representation false.

    e.    **Marketing Demographics.** All Products are marketed directly to consumers for personal consumption, including, to parents, families, and children in particular.

    f.    **Misrepresentation.** All Products contain the same misrepresentation ("No Preservatives") conspicuously and prominently placed on the front label and/or packaging.

    g.    **Packaging.** All Products are packaged similarly—snack-size pouches contained in outer cardboard boxes that all share in common the same marketing claims, including brand identity and product features.

    h.    **Misleading Effect.** The misleading effect of the Challenged Representation on consumers is the same for all Products—consumers overpay expecting a Product without preservatives, but instead receive Products with citric acid and lactic acid, two preservatives. They are denied the benefit of their bargain.

///

## **NO ADEQUATE REMEDY AT LAW**

96.      Plaintiffs and members of the Class are entitled to equitable relief, as no adequate remedy at law exists.

a.     **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately two and six years. Thus, California Subclass members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.     **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote and brand the Products with the Challenged Representation, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that actually comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiffs and Class members may be entitled to restitution under the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c.   **Injunctive Relief to Cease Misconduct and Dispel Misperception.**

Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendants continue to fraudulently misrepresent the Products as containing "No Preservatives." Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    An injunction requiring affirmative disclosures to dispel the public's

2    misperception and prevent the ongoing deception and repeat purchases based

3    thereon is also not available through a legal remedy (such as monetary

4    damages). In addition, Plaintiffs are *currently* unable to accurately quantify

5    the damages caused by Defendants' future harm, because discovery and

6    Plaintiffs' investigation have not yet completed, rendering injunctive relief

7    all the more necessary. For example, because the court has not yet certified

8    any class, the following remains unknown: the scope of the class, the

9    identities of its members, their respective purchasing practices, prices of

10   past/future Products sales, and quantities of past/future Products sales.

11   d.    **Public Injunction.** Further, because a "public injunction" is available under

12   the UCL, damages will not adequately "benefit the general public" in a

13   manner equivalent to an injunction.

14   e.    **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and

15   CLRA are claims asserted on behalf of Plaintiffs and the California Subclass

16   against Defendants, while breach of warranty and unjust

17   enrichment/restitution are asserted on behalf of Plaintiffs and the Nationwide

18   Class. Dismissal of farther-reaching claims, such as restitution, would bar

19   recovery for non-California members of the Class. In other words, legal

20   remedies available or adequate under the California-specific causes of action

21   (such as the UCL, FAL, and CLRA) have no impact on this Court's

22   jurisdiction to award equitable relief under the remaining causes of action

23   asserted on behalf of non-California putative class members.

24   f.    **Procedural Posture—Incomplete Discovery and Pre-Certification.**

25   Lastly, this is an initial pleading in this action and discovery has not yet

26   commenced and/or is at its initial stages. No class has been certified yet. No

27   expert discovery has commenced and/or completed. The completion of

28   fact/non-expert and expert discovery, as well as the certification of this case

as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

97.     **Class Definition.** Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) individually and on behalf of all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

98.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

99.     **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

100.     **Numerosity.** Upon information and belief, the Nationwide Class consists of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

hundreds of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of tens of thousands of purchasers (if not more) dispersed throughout the State of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

101.    **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendants engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products as alleged herein;

b.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c.    Whether Defendants' conduct of advertising and selling the Products as containing "No Preservatives" when they contain citric acid and lactic acid constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code Section 1750, *et seq.*;

d.    Whether Defendants used deceptive representations in connection with the sale of the Products in violation of Civil Code Section 1750, *et seq.*;

e.    Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code Section 1750, *et seq.*;

f.    Whether Defendants advertised the Products with intent not to sell them as advertised in violation of Civil Code Section 1750, *et seq.*;

g.    Whether Defendants' labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

h.    Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

i.    Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.    Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.    Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

l.    Whether Plaintiffs and the Class paid more money for the Products than they

37

actually received;

m.   How much more money Plaintiffs and the Class paid for the Products than they actually received;

n.   Whether Defendants' conduct constitutes common law fraud;

o.   Whether Defendants' conduct constitutes breach of warranty;

p.   Whether Plaintiffs and the Class are entitled to injunctive relief; and

q.   Whether Defendants were unjustly enriched by their unlawful conduct at the expense of Plaintiffs and the Class.

102.   **Typicality.**  Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

103.   **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

104.   **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.  When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendants.

105.  **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

106.  **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

107.  **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**<u>COUNT ONE</u>**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

**(*On Behalf of the California Subclass*)**

108.  **Incorporation by Reference.** Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

109.  **California Subclass.** Plaintiffs bring their claims individually and on behalf of the California Subclass.

110.  **The UCL.** California Business and Professions Code, Section 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive,

39

1   untrue or misleading advertising."

2   111.   **False Advertising Claims.** Defendants, in their advertising and packaging of the

3   Products, made false and misleading statements and fraudulent omissions regarding the quality

4   and characteristics of the Products—specifically, the "No Preservatives" Representation—despite

5   the fact the Products are made with citric acid and lactic acid, two well-established preservatives.

6   Such claims and omissions appear on the label and packaging of the Products, which are sold at

7   retail stores throughout California and the United States, and over the internet.

8   112.   **Deliberately False and Misleading.** Defendants do not have any reasonable basis

9   for the claims about the Products made in Defendants' advertising and on Defendants' packaging

10  or labeling because the Products are made with the preservatives citric acid and lactic acid.

11  Defendants know and knew that the Products are not truly preservative-free, yet Defendants

12  intentionally advertise and market the Products to deceive reasonable consumers into believing

13  that the Products contain no preservatives.

14  113.   **False Advertising Claims Cause Purchase of Products.** Defendants' labeling and

15  advertising of the Products caused, and continues to cause, reasonable consumers, including

16  Plaintiffs, to purchase the Products believing that they are made without preservatives.

17  114.   **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact

18  and have lost money as a result of Defendants' unlawful conduct—namely Plaintiffs and the

19  California Subclass lost the premium they paid for Products that are preservative-free.

20  115.   **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes

21  unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair

22  competition and provides, in pertinent part, that "unfair competition shall mean and include

23  unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading

24  advertising." Cal. Bus. & Prof. Code § 17200. In addition, Defendants' use of various forms of

25  advertising media to advertise, call attention to, or give publicity to the sale of goods or

26  merchandise that are not as represented constitutes unfair competition, unfair, deceptive, untrue or

27  misleading advertising, and an unlawful business practice within the meaning of Business and

28  Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to deceive the consuming public, in violation of Business and Professions Code Section 17200.

116. **Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

117. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

118. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products as alleged herein. Likewise, Plaintiffs and the members of the California Subclass seek an order requiring Defendants to disclose such misrepresentations, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentations.

119. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiffs and members of the California Subclass were harmed when they paid a premium for the Products. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the premium paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

**A. "Unfair" Prong**

120. **Unfair Standard.** Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, et seq., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1  themselves could not reasonably avoid." Camacho v. Auto Club of Southern California, 142 Cal.

2  App. 4th 1394, 1403 (2006).

3   121.   **Injury.** Defendants' action of mislabeling and advertising the Products with the "No

4  Preservatives" representation does not confer any benefit to consumers; rather, doing so causes

5  injuries to consumers, who overpay for the Products and receive Products of a lesser standard than

6  what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by

7  Defendants' deceptive labeling and advertising of the Products. Accordingly, the injuries caused

8  by Defendants' deceptive labeling and advertising outweigh any benefits.

9   122.   **Balancing Test.** Some courts conduct a balancing test to decide if a challenged

10  activity amounts to unfair conduct under California Business and Professions Code Section

11  17200. In so doing, they "weigh the utility of the Defendant's conduct against the gravity of the

12  harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir.

13  2012).

14   123.   **No Utility.** Here, Defendants' conduct of labeling the Products with the "No

15  Preservatives" representation when the Products are made with the preservatives citric acid and

16  lactic acid has no utility and financially harms purchasers. Thus, the utility of Defendants'

17  conduct is vastly outweighed by the gravity of harm.

18   124.   **Legislative Declared Policy.** Some courts hold that "unfairness must be tethered to

19  some legislative declared policy or proof of some actual or threatened impact on competition."

20  *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

21   125.   The California legislature has maintained a declared policy of prohibiting

22  misrepresentations regarding the characteristics, ingredients, uses, or benefits of consumer goods,

23  reflected in Cal. Civ. Code § 1770(a)(5).

24   126.   The California legislature has maintained a declared policy of prohibiting

25  misrepresentations regarding the standard, quality, or grade of consumer goods, reflected in Cal.

26  Civ. Code § 1770(a)(7).

27   127.   The California legislature has maintained a declared policy of prohibiting the

28  advertising of goods with intent not to sell them as advertised, reflected in Cal. Civ. Code §

1770(a)(9).

128.     Defendants' unfair conduct is tethered to the aforementioned legislative declared policies.

129.     **Injury to Lawful Competitors.** Defendants' labeling and advertising of the Products with the false "No Preservatives" representation gives them a competitive advantage in the marketplace and harms their lawfully acting competitors that do not make similar misrepresentations.

130.     **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of their unfair conduct. Defendants' misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

131.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the "No Preservatives" representation.

132.     **Ongoing Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

133.     **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products with the "No Preservatives" representation.

134.     **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiffs and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiffs and the California Subclass paid for Products that contain the preservatives citric acid and lactic acid. Plaintiffs and the California Subclass would not have purchased the Products, or would have paid

substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiffs seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**B. "Fraudulent" Prong**

135. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992).

136. **Fraudulent Business Practice.** Defendants used the No Preservatives Representation with the intent to sell the Products to consumers, including Plaintiffs and the California Subclass. The Challenged Representation is false, and Defendants knew or should have known of its falsity. The Challenged Representation is likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

137. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendants constitute a fraudulent business practice in violation of California Business and Professions Code Section 17200.

138. **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the material and false labeling and advertising as alleged herein to their detriment in that they purchased the Products.

139. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products as alleged herein.

140. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

141. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling the Products as alleged herein.

142.     **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products. Specifically, Plaintiffs and the California Subclass paid for products that they believed were made without preservatives, when, in fact, the Products are made with citric acid and lactic acid, two known preservatives. Plaintiffs and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiffs seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

## C. "Unlawful" Prong

143.     **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

144.     **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged herein, violates California Civil Code Section 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code Section 17500, *et seq.* (the "**FAL**") as set forth below in the Sections regarding those causes of action.

145.     **Additional Violations.** Defendants' conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under Business and Professions Code Sections 17200-17208. Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate Civil Code Sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

146.     **Unlawful Conduct.** Defendants' packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of their unlawful conduct.

147.     **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendants could have refrained from labeling the Products with the "No Preservatives" Representation.

148.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

149.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of false and deceptive advertising of the Products.

150.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products. Plaintiffs and the California Subclass would not have purchased the Products if they had known that Defendants purposely deceived consumers into believing that the Products are preservative-free. Accordingly, Plaintiffs seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>**COUNT TWO**</u>

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code § 17500, *et seq*.)**

**(*On Behalf of the California Subclass*)**

151.    **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

152.    **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass.

153.    **FAL Standard.** The False Advertising Law, codified at California Business and Professions Code Section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising."

154.    **False & Material Representations Disseminated to Public.** Defendants violated Section 17500 when it advertised and marketed the Products in an unfair, deceptive, untrue, and misleading way and disseminated these misrepresentations to the public through the Products'

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

labeling, packaging, and advertising. These representations are false because the Products do not conform to them. The representations are material because they are likely to mislead a reasonable consumer into purchasing the Products.

155.    **Knowledge.** In making and disseminating the representations alleged herein, Defendants knew or should have known that the representations are untrue or misleading, and acted in violation of Section 17500.

156.    **Intent to Sell.** Defendants' labeling and advertising as alleged herein was specifically designed to induce reasonable consumers, like Plaintiffs and the California Subclass, to purchase the Products.

157.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT THREE

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code § 1750, *et seq.*)**

**(*On Behalf of the California Subclass*)**

158.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

159.    **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass.

160.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

or which results in the sale or lease of goods or services to any consumer are unlawful." Civ. Code § 1770(a).

161. **Goods/Services.** The Products are "goods," as defined by the CLRA in Civil Code Section 1761(a).

162. **Defendants.** Defendants are "person[s]," as defined by the CLRA in Civil Code Section 1761(c).

163. **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in Civil Code Section 1761(d).

164. **Transactions.** The purchase of the Products by Plaintiffs and members of the California Subclass are "transactions" as defined by the CLRA under Civil Code Section 1761(e).

165. **Violations of the CLRA.** Defendants violated the following sections of the CLRA by selling the Products to Plaintiffs and the California Subclass through the false, misleading, deceptive, and fraudulent labeling and advertising:

    a.     Section 1770(a)(5) by representing that the Products have "characteristics . . . uses, [or] benefits . . . that [they] do not have."

    b.     Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c.     Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

166. **Knowledge.** Defendants' uniform and material misrepresentations and omissions regarding the Products are likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

167. **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sales of the Products.

168. **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and

failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

169.    **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Defendants' violations of the CLRA because they relied on the Challenged Representation in deciding to purchase the Products. The Challenged Representation was a substantial factor and material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

170.    **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to Civil Code Section 1782, Defendants were provided notice of their alleged violations more than thirty days prior to the filing of this complaint. Plaintiffs' counsel, acting on behalf of Plaintiffs and all members of the Class, mailed copies of a letter, via U.S. certified mail, return receipt requested, addressed to Defendant Welch's at its headquarters and principal place of business (300 Baker Avenue, Suite 101, Concord, MA 01742) and its registered agent for service of process (Corporation Service Company, 84 State Street, Boston, MA 02109), which were delivered to those addresses on or about March 14, 2022. Additionally, Defendant PIM received, or should have received, a copy of the notice letter.

171.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies.

172.    **Injunction.** Given that Defendants' conduct violated Civil Code Section 1780, Plaintiffs and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendants' violations of the CLRA and to dispel the public

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

misperception generated, facilitated, and fostered by Defendants' false advertising campaign. Plaintiffs have no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiffs and the California Subclass. Accordingly, Plaintiffs seek an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2), and otherwise require Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products as alleged herein.

## COUNT FOUR

### Common Law Fraud

### (On Behalf of the Nationwide Class and California Subclass)

173. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

174. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) against Defendants.

175. **Fraud.** Defendants have willfully, falsely, and knowingly labeled and packaged the Products in a manner indicating to consumers that the Products contain "No Preservatives." However, the Products contain the preservatives citric acid and lactic acid.

176. **Materiality.** Defendants' misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making his or her purchase decision), because they relate to the presence of preservatives in the Products.

177. The "No Preservatives" representation makes the product more attractive to a rapidly growing contingent of consumers who wish to avoid preservatives in foods they consume.

178. As alleged supra, the Products are specifically marketed towards health-conscious consumers, including children and parents who wish to provide a healthy and well-balanced diet for their children. Thus, the "No Preservatives" representation makes it more likely that target consumers will purchase the Products.

179. **Knowledge.** Defendants knew of, or showed reckless disregard for, the fact that the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"No Preservatives" representation was false because the Products contain the preservatives citric acid and lactic acid.

180.    **Intentional.** Defendants intended for Plaintiffs and the Class to rely on the "No Preservatives" representation, as evidenced by Defendants' consistent use and prominent placement of the representation on labeling and packaging across all variations of the Products.

181.    **Reliance.** Plaintiffs and the Class have reasonably and detrimentally relied on Defendants' misrepresentations when purchasing the Products and, had they known that the Products contain preservatives, they would not have purchased the Products or would have paid significantly less for the Products.

182.    **Causation.** Therefore, as a direct and proximate result of Defendants' fraud, Plaintiffs and members of the Class have lost money and suffered injury in fact.

**COUNT FIVE**

**Intentional Misrepresentation**

***(On Behalf of the Nationwide Class & California Subclass)***

183.    **Incorporation by Reference.** Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

184.    **Nationwide Class & California Subclass.** Plaintiffs bring this cause of action individually and on behalf of all members of the Nationwide Class and California Subclass against Defendants.

185.    **Misrepresentation.** Defendants misrepresent the Products as containing no preservatives. Defendants label and advertise the Products using the "No Preservatives" representation as alleged herein, indicating to consumers that the Products do not contain any preservatives whatsoever. In reality, the Products contain the preservatives citric acid and lactic acid.

186.    **Materiality.** Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the type and quality of ingredients used in the Products. Specifically, they relate to the presence of preservatives in the Products, a type of ingredient that many consumers attempt to avoid. A reasonable consumer would attach importance to such

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

representations and would be induced to act thereon in making his or her purchase decision.

187.    **Knowledge.** At all relevant times when such misrepresentations were made, Defendants knew or should have known that the representations were false and misleading.

188.    **Intentional.** Defendants intended for Plaintiffs and the Class to rely on the "No Preservatives" representation, as evidenced by Defendants' consistent use and prominent placement of the representation on labeling and packaging across all variations of the Products.

189.    **Reliance.** Plaintiffs and the Class reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

190.    **Causation.** As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and the Class have lost money and suffered injury in fact.

**COUNT SIX**

**Breach of Warranty**

***(On Behalf of the Nationwide Class and California Subclass)***

191.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

192.    **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

193.    **Express Warranty.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Defendants. Defendants purport, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the labeling and advertising as alleged herein.

194.    **Implied Warranty of Merchantability.** By advertising and selling the Products at

52

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

issue, Defendants made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Defendants—namely, that the Products conform to the labeling and advertising and contain "No Preservatives."

195.    **Breach of Warranty.** Contrary to Defendants' warranties, the Products do not conform to the labeling and advertising as alleged herein and, therefore, Defendants breached their warranties about the Products and their qualities.

196.    **Causation/Remedies.** As a direct and proximate result of Defendants' breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT SEVEN

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

197.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

198.    **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

199.    **Plaintiffs/Class Conferred a Benefit.** By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendants in the form of the purchase price of the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Products.

200.    **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

201.    **Defendants' Unjust Receipt Through Deception.** Defendants' knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representations and omissions.

202.    **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## **PRAYER FOR RELIEF**

203.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as follows:

    a.    **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

    b.    **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

    c.    **Injunction:** For an order requiring Defendants to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

    d.    **Damages/Restitution/Disgorgement:** For an order awarding monetary

54

compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.   **Attorneys' Fees and Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f.   **Pre-/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

g.   **All Just and Proper Relief:** For such other and further relief as the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: November 9, 2022                    Respectfully submitted,

                                           **CLARKSON LAW FIRM, P.C.**
                                           By:

                                            _/s/ Zachary T. Chrzan_____
                                           Ryan J. Clarkson
                                           Zachary T. Chrzan

                                           *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT